IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 22-cv-00141-RMR-MEH

CLVM LLC d/b/a Valimenta Labs, and
EMEK BLAIR,

    Plaintiffs,

v.

ERIC VAN HANDEL,

    Defendant.

---

### RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

---

**Michael E. Hegarty, United States Magistrate Judge**.

    Plaintiffs CLVM LLC d/b/a Valimenta Labs ("CLVM") and Emek Blair assert three claims for relief stemming from a previous settlement agreement reached by the parties. Specifically, Plaintiffs bring claims for breach of contract, fraudulent misrepresentation, and declaratory judgment. Defendant Eric Van Handel filed the present motion to dismiss ("Motion"), arguing for dismissal of all claims. ECF 11. The Motion is fully briefed, and the Court finds that oral argument would not materially assist in its adjudication. As set forth below, this Court respectfully recommends granting the Motion.

### FACTUAL BACKGROUND

    The following are factual allegations (as opposed to legal conclusions, bare assertions, or conclusory allegations) made by Plaintiffs in their Complaint, which are taken as true for analysis under Fed. R. Civ. P. 12(b)(6) pursuant to *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

CLVM is a Colorado limited liability company that is owned by Emek Blair. ECF 4 at 1, ¶¶ 1–2. On or about December 22, 2015, CLVM entered into a Promissory Note and Equity Option Agreement ("Note") by and between Defendant and third-party Charles Barker. *Id.* at 2, ¶ 6. Mr. Barker and Defendant, referred to as "Lenders" under the Note, agreed to provide three hundred thirty-five thousand dollars ($335,000.00) in exchange for five percent interest per annum or, in the alternative, an option ("Option") to purchase a combined sixteen percent equity interest in CLVM, with each holding eight percent of the total shares. *Id.* at ¶¶ 7–8. Defendant tendered the entire amount on behalf of both Lenders ("Loan"). *Id.* at ¶ 9. Mr. Barker provided no consideration for the Note. *Id.* at ¶ 10.

Rather, Defendant and Mr. Barker entered into a Collateralized Promissory Note, dated December 1, 2015, in which Mr. Barker agreed to pay Defendant one hundred sixty-seven thousand five hundred dollars ($167,500.00) with interest at a rate of five percent per annum until the Loan was repaid ("Barker Note"). *Id.* at ¶ 11. Defendant acknowledged that he was the sole lender entitled to payment of the Loan. *Id.* at ¶ 13.

CLVM began repaying the Loan in December 2016. *Id.* at 3, ¶ 16. Although CLVM made the payments to both Defendant and Mr. Barker, Defendant requested that most of the payments be made to Mr. Barker. *Id.* CLVM agreed to this because the Barker Note provided that "any money received [by Mr. Barker] by CLVM LLC shall be distributed directly to [Defendant] until such time [as Defendant] has been paid in full including interest." *Id.* Despite making the payments, CLVM learned that Mr. Barker never paid any money he received from CLVM to Defendant, nor has he paid any money to Defendant pursuant to the Barker Note. *Id.*

On June 18, 2019, CLVM paid the remaining principal on the Loan plus five percent interest to Defendant. *Id.* at ¶ 18. However, Defendant refused to cash the check. *Id.* Instead, on

2

July 17, 2019, Mr. Barker attempted to exercise the Option and indicated that Defendant also wished to exercise the Option. *Id.* at ¶ 19. CLVM rejected this request because the Lenders had already chosen the repayment of the Loan. *Id.* By March 2020, both Defendant and Mr. Barker were represented by counsel, and Defendant knew that Mr. Barker was contemplating a lawsuit against CLVM and Mr. Blair regarding obligations under the Note ("Barker Litigation"). *Id.* at ¶ 20. In March 2020, Plaintiffs and Defendant engaged in a mediation regarding Defendant's claim that he remained entitled to an eight percent interest in CLVM. *Id.* at ¶ 21. Despite communicating with Mr. Barker, Defendant did not invite him to participate in the mediation. *Id.* at ¶ 22. Plaintiffs did not realize that Mr. Barker intended to initiate the Barker Litigation, or they would not have mediated without his involvement. *Id.*

Because Plaintiffs were concerned that Mr. Barker would attempt to exercise the Option even if they settled with Defendant, Plaintiffs "wanted to ensure that any potential settlement would extinguish the Promissory Note in its entirety." *Id.* at ¶ 23. Accordingly, Plaintiffs requested, and Defendant agreed, that Defendant would execute an affidavit stating that all obligations to him under the Note would be satisfied upon payment under a settlement agreement. *Id.* at 3, ¶ 24. On March 19, 2020, the parties entered into a Mutual Release and Settlement Agreement ("Settlement Agreement"). *Id.* at 4, ¶ 26. It provided that Plaintiffs would pay Defendant five hundred forty thousand dollars ($540,000.00) in exchange for the execution of a broad, general release. *Id.* at ¶ 27. The release included all claims related to the Note. *Id.* Defendant also signed an affidavit ("Affidavit"), which provided:

    1.    In or around December 2015, I provided $335,000 to CLVM LLC pursuant to [the Note].

    2.    The Note was executed by myself and Charles Barker ("Barker"), as "Lender," and Emek Blair on behalf of CLVM LLC, as "Borrower."

>        \*\*\*
>
> 4.   On March 6, 2020, Emek Blair and I participated in a mediation concerning the rights and oblgiations of myself as a Lender and CLVM as Borrower under the Note and as a result a settlement was reached under which I agreed to satisfaction of all amounts due to me, Eric Van Handel, under the Note.
>
> 5.   Upon payment by Blair of all sums described in that certain Mutual Release and Settlement Agreement dated effective March 19, 2020, all of CLVM LLC's obligations to Eric Van Handel under the Note have been fully satisfied and resolved.

*Id.* at ¶ 28.

When Defendant signed the Settlement Agreement and the Affidavit, he knew that Mr. Barker was preparing to take a contrary position in the Barker Litigation and concealed that information from Plaintiffs. *Id.* at 5, ¶ 30. On April 7, 2020, Mr. Barker initiated the Barker Litigation against Plaintiffs, alleging that the Note was not extinguished by the Settlement Agreement. *Id.* at 5, ¶ 31. During his deposition in the Barker Litigation, Defendant testified that (1) Mr. Barker, not Defendant, loaned CLVM the $167,500; (2) Mr. Barker is entitled to repayment under the Note; and (3) the Note was not repaid under the Settlement Agreement. *Id.* at ¶ 32. These statements and others, *id.* at 5, ¶¶ 33–34, allegedly contradict Defendant's sworn Affidavit. *Id.* at ¶ 35.

Due to Defendant's actions, Plaintiffs assert three claims in this case. First, Defendant breached the Settlement Agreement and the implied duty of good faith and fair dealing. *Id.* at 6–7, ¶¶ 43–50. Second, Defendant made false misrepresentations or concealed information to induce Plaintiffs to enter into the Settlement Agreement. *Id.* at 7–8, ¶¶ 51–58. Third, Plaintiffs seek a declaration that Mr. Barker no longer owes any money pursuant to the Barker Note, and CLVM thus owes no obligation to Mr. Barker under the Note. *Id.* at 8, ¶¶ 59–62.

## **LEGAL STANDARDS**

The purpose of a motion to dismiss under Fed. R. Civ. P. 12(b)(6) is to test the sufficiency of the plaintiff's complaint. *Sutton v. Utah State Sch. For the Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 2008). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility, in the context of a motion to dismiss, means that the plaintiff pled facts which allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id. Twombly* requires a two-prong analysis. First, a court must identify "the allegations in the complaint that are not entitled to the assumption of truth," that is, those allegations which are legal conclusions, bare assertions, or merely conclusory. *Id.* at 680. Second, the Court must consider the factual allegations "to determine if they plausibly suggest an entitlement to relief." *Id.* at 681. If the allegations state a plausible claim for relief, such claim survives the motion to dismiss. *Id.* at 679.

Plausibility refers "'to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.'" *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012) (quoting *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008)). "The nature and specificity of the allegations required to state a plausible claim will vary based on context." *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1215 (10th Cir. 2011). Thus, while the Rule 12(b)(6) standard does not require that a plaintiff establish a prima facie case in a complaint, the elements of each alleged cause of action may help to determine whether the plaintiff has set forth a plausible claim. *Khalik*, 671 F.3d at 1192. However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not

suffice." *Iqbal*, 556 U.S. at 678. The complaint must provide "more than labels and conclusions" or merely "a formulaic recitation of the elements of a cause of action," so that "courts 'are not bound to accept as true a legal conclusion couched as a factual allegation.'" *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint has made an allegation, "but it has not shown that the pleader is entitled to relief." *Id.* (quotation marks and citation omitted).

## ANALYSIS

Defendants seek dismissal of all of Plaintiff's claims. On the breach of contract claim, Defendants argue that Plaintiffs have not stated a plausible claim of a breach of any provision of the Settlement Agreement. ECF 11 at 2. For the fraudulent misrepresentation claim, Defendants contend that dismissal is appropriate for Plaintiffs' failure to meet either the Rule 12(b)(6) or Rule 9(b) pleading standards. *Id.* Finally, Defendant requests that the declaratory judgment claim should be dismissed under Rule 12(b)(7) or, alternatively, the court should decline to exercise jurisdiction over the claim. *Id.*

**I.    Breach of Contract**

For a party to assert a breach of contract claim under Colorado[1] law, it must show: (1) the existence of a contract, (2) performance by the plaintiff or some justification for nonperformance, (3) failure to perform the contract by the defendant, and (4) resulting damages. *W. Distrib. Co. v. Diodosio*, 841 P.2d 1053, 1058 (Colo. 1992). Additionally, "the terms of a contract must be

---

[1] The parties agree that Colorado law applies.

expressed with a reasonable certainty." *Am. Min. Co. v. Himrod-Kimball Mines Co.*, 235 P.2d 804, 807 (Colo. 1951). Plaintiffs' breach of contract claim hinges on the contradictions between Defendant's sworn Affidavit and deposition testimony in the Barker Litigation. Resp. at 4–5. Specifically, Plaintiffs argue that Defendant breached by lying in his Affidavit. *Id.* at 7. Defendant moves for dismissal of the claim because he complied with the terms of the Settlement Agreement. Mot. at 6. The Court agrees with Defendant.

### A.     Settlement Agreement

Plaintiffs allege in their Complaint that "[a]n essential provision of the Settlement Agreement was the incorporated Affidavit." ECF 4 at 6, ¶ 45. Defendant signed the Affidavit. *Id.* at 4, ¶ 28. Plaintiffs' problem is that Defendant "testif[ied] in a manner that directly contracted the Affidavit during a deposition in the Barker Litigation." *Id.* at 7, ¶ 48. But the Settlement Agreement is silent as to Defendant's testifying obligations. ECF 1-4 at 2.[2] Indeed, the Settlement Agreement *only* requires that Defendant execute the Affidavit. *Id.* By the plain terms of the Settlement Agreement, Plaintiffs received the consideration they bargained for. Because Plaintiffs have not identified any other provision of the Settlement Agreement in which Defendant is alleged to have breached through his allegedly contradicting testimony, Plaintiffs' breach of contract claim must fail. *See Valentine v. PNC Fin. Servs. Grp., Inc.*, No. 18-cv-01934-CMA-SKC, 2019 WL 5790696, at *6 (D. Colo. Aug. 1, 2019), *recommendation adopted*, 2019 WL 4126596 (D. Colo. Aug. 30, 2019); *see also Stender v. Gerardi*, No. 07-cv-02503-EWN-MJW, 2008 WL 4452117 (D. Colo.

---

[2] The Court can consider the Settlement Agreement because it is cited in the Complaint and central to Plaintiffs' claims. *Masterpiece Cakeshop Inc. v. Elenis*, 445 F. Supp. 3d 1226, 1239 (D. Colo. Jan. 4, 2019) ("A court may also consider documents that are incorporated in the complaint by reference or that are referred to in the complaint, if the documents are central to the complaint and the parties do not dispute their authenticity.").

7

Sep. 30, 2008) (finding no breach of contract "because [plaintiffs] have not adequately indicated which provisions of which contracts allegedly contain such rights").

### B. Implied Duty of Good Faith and Fair Dealing

In addition to an express breach of contract, Plaintiffs assert that Defendant breached the implied duty of good faith and fair dealing. "Under Colorado law, every contract contains an implied duty of good faith and fair dealing." *City of Golden v. Parker*, 138 P.3d 285, 292 (Colo. 2006). "The duty of good faith and fair dealing may be relied upon 'when the manner of performance under a specific contract term allows for discretion on the part of either party.'" *Id*. (quoting *Amoco Oil Co. v. Ervin*, 908 P.2d 493, 498 (Colo. 1995)). However, this duty of good faith "cannot be used to 'contradict terms or conditions for which a party has bargained'; 'obligate a party to accept a material change in the terms of the contract'; 'assume obligations that vary or contradict the contract's express provisions'; or 'permit a party to inject substantive terms into the contract.'" *Goodrich v. Alterra Mountain Co.*, No. 20-cv-01057-RM-SKC, 2021 WL 2633326, at *7 (D. Colo. June 25, 2021) (quoting *Stokes v. DISH Network, L.L.C.*, 838 F.3d 948, 953 (8th Cir. 2016)).

As the Court already explained, the Settlement Agreement does not contain a provision mandating Defendant testify in a certain way. The Settlement Agreement obligated Defendant to execute an Affidavit and thus swear under oath to the information in the Affidavit. He did so. Plaintiffs argue that the "Affidavit obligation . . . conferred discretion on [Defendant] regarding what he would swear was true in his Affidavit as well as how he would act in the future regarding those obligation in light of what his Affidavit contained." Resp. at 9. But there was no discretion with the execution of the Affidavit since the Settlement Agreement indicated that Defendant would sign the document (the Affidavit) attached as Exhibit A. ECF 1-4 at 2. In other words, Defendant

did not have discretion to add or subtract information from the Affidavit. *See City of Golden v. Parker*, 138 P.3d 285, 292 (Colo. 2006) ("Discretion in performance occurs 'when the parties, at formation, defer a decision regarding performance terms of the contract' leaving one party with the power to set or control the terms of performance after formation.") (quoting *Amoco Oil Co.*, 908 P.2d at 498).

To the extent the Settlement Agreement conferred any discretion—a dubious proposition—Defendant exercised that discretion by swearing under oath to the statements in the Affidavit as agreed to by the parties. As to obligations beyond the Affidavit, for which the Settlement Agreement is silent, Plaintiffs cannot "'hijack' the implied covenant to provide [an obligation] where none exists." *Goodrich*, 2021 WL 2633326, at *7. Because the implied covenant applies "only when the manner of performance under a *specific contract term* allows for discretion on the part of either party," *Amoco Oil Co.*, 908 P.2d at 498 (emphasis added), and Plaintiffs have pointed to no such term in the Settlement Agreement, the Court respectfully recommends dismissing Plaintiffs' claim for the breach of the implied duty of good faith and fair dealing.

## II.     **Fraudulent Misrepresentation/Concealment**

Under Colorado law, a claim for fraudulent misrepresentation has five elements: (1) the defendant made a false representation of a material fact, (2) the one making the representation knew it was false, (3) the person to whom the representation was made was ignorant of the falsity, (4) the representation was made with the intention that it be acted upon, and (5) the reliance resulted in damage to the plaintiff. *Bristol Bay Prods., LLC v. Lampack*, 312 P.3d 1155, 1160 (Colo. 2013). The elements of a fraudulent concealment claim are nearly identical: (1) the concealment of a material existing fact that in equity and good conscience should be disclosed; (2) knowledge on the part of the party against whom the claim is asserted that such a fact is being

9

concealed; (3) ignorance of that fact on the part of the one from whom the fact is concealed; (4) the intention that the concealment be acted upon; and (5) action on the concealment resulting in damages. *Ballow v. PHICO Ins. Co.*, 875 P.2d 1354, 1361 (Colo. 1993) (citation omitted).

Plaintiffs allege three, primary false representations and/or concealed facts to support their claim:

1. Defendant requested that CLVM repay the Loan to Barker but did not require Barker to repay the loan underlying the Barker Note to Defendant;
2. Defendant's agreement to execute the Affidavit, which included the statement, "Upon payment by Blair of all sums described in that certain [Settlement Agreement] dated effective March 19, 2020, all of CLVM LLC's obligations to [Defendant] under the Note have been fully satisfied and resolved"; and
3. Defendant knew that Mr. Barker was going to file the Barker Litigation.

ECF 4 at 7, ¶ 52. Plaintiffs argue that these facts "were material to the Settlement Agreement and CLVM and [Mr.] Blair's resulting agreement to pay [Defendant] $540,000." *Id.* at ¶ 53. In other words, Plaintiffs would not have entered into the Settlement Agreement if they had known the truth because they desired to "resolve the Note dispute in its entirety." Resp. at 11.

In their Complaint and response brief, Plaintiffs consistently take the position that the purpose of the Settlement Agreement was to resolve all claims concerning the Note. *E.g.*, ECF 4 at 3, ¶ 23. Yet, this proposition is belied by the terms of the Settlement Agreement itself. *Tilley v. Maier*, 495 F. App'x 925, 927 (10th Cir. 2012) ("[F]actual allegations that contradict . . . a properly considered document are not well-pleaded facts that the court must accept as true."). Under the mutual release, the parties "acknowledge[d] and agree[d] that [Defendant] has no authority nor purports to have any authority to bind Barker to any release, waiver, or settlement of asserted or unasserted claims of Barker." ECF 1-4 at 2. After all, Plaintiffs acknowledge that the Settlement Agreement and Affidavit only pertained to "all obligations to [Defendant] under the Note." *Id.* at ¶ 24. It is a contradiction to say that the Settlement Agreement released all possible claims under

10

the Note when it was limited by its terms to Defendant's claims and expressly precluded waiver of any of Mr. Barker's claims.

"It is long-settled law that if a party claiming fraud has access to information that was equally available to both parties and would have led to the true facts, that party has no right to rely on a false representation." *Vinton v. Virzi*, 269 P.3d 1242, 1247 (Colo. 2012). All the material facts Plaintiffs alleged Defendant misrepresented or concealed, Plaintiff either knew or had access to the information to know. They knew Mr. Barker was represented by counsel. ECF 26 at 7, ¶ 10 (listing as an undisputed fact in the Scheduling Order that "CLVM and Barker engaged in settlement discussions, including discussions through counsel to schedule a mediation"). They knew Mr. Barker made a demand for his eight percent equity interest. ECF 4 at 3, ¶ 19. They knew that "even if they settled with [Defendant], that Barker may still try to exercise the Option." *Id.* at ¶ 23. Moreover, the Settlement Agreement and Affidavit were limited to the obligations owed to Defendant, not Mr. Barker. The express terms of the Settlement Agreement excluded from the release any claim by Mr. Barker. ECF 1-4 at 2. From the totality of these circumstances, Plaintiffs had informational access to the fact that Mr. Barker might have taken a contrary position to the Settlement Agreement (to which he was not a party) by continuing to claim he could exercise the Option. *Pernick v. Computershare Trust Co., Inc.*, 136 F. Supp. 3d 1247, 1269–70 (D. Colo. 2015) (finding no fraud in which party "had access to the very information that would have led to the conclusion" that the other party had made a false representation).

The Court has taken Plaintiffs' well-pleaded allegations as true and viewed them in the light most favorable to Plaintiffs. But when Plaintiffs' allegations are contradicted by the terms of the Settlement Agreement, the Court does not take the allegations as true. When only the well-pleaded allegations are considered, the Court finds no plausibly pleaded fraudulent

11

misrepresentation or concealment claim. Thus, the Court respectfully recommends the dismissal of this claim.[3]

### III. Declaratory Judgment

The Tenth Circuit in *State Farm Fire & Cas. Co. v. Mhoon* described a two-part test that trial courts must consider when deciding whether to hear a declaratory judgment claim. First, "[w]ill a declaration of rights, under the circumstances, serve to clarify or settle legal relations in issue?" 31 F.3d 979, 983 (10th Cir. 1994). Second, "[w]ill it terminate or afford relief from the uncertainty giving rise to the proceeding?" *Id.* "If an affirmative answer can be had to both questions, the trial court should hear the case; if not, it should decline to do so." *Id.* However, in addition to these two questions, the Tenth Circuit also identified five factors that courts must consider:

> [1] whether a declaratory action would settle the controversy; [2] whether it would serve a useful purpose in clarifying the legal relations at issue; [3] whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for a race to *res judicata* "; [4] whether use of a declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction; and [5] whether there is an alternative remedy which is better or more effective.

*Id.* (citing *Allstate Ins. Co. v. Green*, 825 F.2d 1061, 1063 (6th Cir. 1987)).

Here, a consideration of the above factors cautions against the exercise of jurisdiction over Plaintiffs' declaratory judgment claim. As currently framed, the declaratory judgment would not resolve this case since it only seeks a declaration that Mr. "Barker no longer owes any money pursuant to the Barker Note, and CLVM thus owes no obligation to Barker under the Note." ECF 4 at 8, ¶ 61. The claims for breach of contract and fraudulent misrepresentation are independent of CLVM's obligations to Mr. Barker. More importantly, a declaration in this case would not resolve

---

[3] As such the Court does not consider Defendant's Rule 9(b) arguments.

the ongoing Barker Litigation in state court. While Mr. Barker made a declaratory judgment claim in that action, he also asserted other claims, and Plaintiffs brought a defamation counterclaim. ECF 11-2; ECF 11-3. For these reasons, the first two *Mhoon* factors weigh against exercising jurisdiction. *See Quest Commc'ns Int'l, Inc. v. Thomas*, 52 F. Supp. 2d 1200, 1207 (D. Colo. 1999) (resolving the first two factors against exercising jurisdiction because the declaratory judgment action would leave unresolved other issues in parallel state court proceedings); *see also Mid-Continent Cas. Co. v. Village at Deer Creek Homeowners Ass'n, Inc.*, 685 F.3d 977, 982 n.3 (10th Cir. 2012).

Additionally, the existence of the Barker Litigation causes the Court to weigh the third, fourth, and fifth factors against exercising jurisdiction. Mr. Barker seeks a declaration of his rights under the Note in the Barker Litigation. ECF 11-2. Although it may not have been their intent, by seeking a similar declaration in federal court, Plaintiffs have initiated a race to *res judicata* that threatens to create friction between the federal and state courts. *See Bd. of Cnty. Commr's of Cnty. of Boulder v. Rocky Mountain Christian Church*, 481 F. Supp.2d 1181, 1188 (D. Colo. 2007) (finding the declaratory judgment claim to be "nothing more than a procedural maneuver . . . to seize a strategic advantage"). Finally, Plaintiffs have a more effective remedy in the concurrent, Barker Litigation since that case "aggregates all of the various [claims between Plaintiffs and Mr. Barker], and thus, will offer a conclusive adjudication of the parties' dispute, whereas this case isolates just one of those issues." *Id.* at 1188–89; *see also Federal Ins. Co. v. Sprint Corp.*, 293 F. Supp. 2d 1245, 1248 (D. Kan. 2003) (declining exercise of jurisdiction, in part, because "[a]ll necessary parties are or can be joined . . . and all claims can be adjudicated" in concurrent state court proceeding).

Accordingly, the Court finds that the balance of the *Mhoon* factors counsels against exercising jurisdiction under the Declaratory Judgment Act, 28 U.S.C. § 2201. The Court respectfully recommends dismissing Plaintiffs' declaratory judgment claim.[4]

## IV. Leave to Amend

"In dismissing a complaint for failure to state a claim, the court should grant leave to amend freely 'if it appears at all possible that the plaintiff can correct the defect.'" *Triplett v. LeFlore Cty., Oklahoma*, 712 F.2d 444, 446 (10th Cir. 1983) (quoting 3 Moore's Federal Practice, ₱ 15.10 & n. 2 (1983)). However, "[a]t least outside of the pro se context, when a litigant fails to put the district court on adequate notice—in a legally cognizable manner—of his request for leave to amend, then the district court will not be faulted for failing to grant leave to amend." *Doe v. Heil*, 533 F. App'x 831, 847 (10th Cir. 2013).

Here, the Court is recommending dismissal of all claims against Defendant. Plaintiffs are represented by counsel, but Plaintiffs have not requested, through motion or otherwise, leave to amend. It would be within this Court's discretion to refuse to grant leave to amend sua sponte. *Id.* ("[W]e will not upset the district court's dismissal with prejudice on the grounds that it failed sua sponte to give a [plaintiff] —who was represented by counsel—an opportunity to file an amended complaint."); *see Burger King Corp. v. Weaver*, 169 F.3d 1310, 1318 (11th Cir. 1999) ("Although leave to amend should be liberally granted, a trial court is not required to sua sponte grant leave to amend prior to making its decision [to dismiss]."). Yet, given that Plaintiffs have not had an opportunity to amend, the Court cannot, at this point, find that permitting amendment certainly would prove futile. Accordingly, the Court recommends dismissal of Plaintiffs' claims without prejudice.

---

[4] Therefore, the Court will not consider Defendant's 12(b)(7) argument.

**CONCLUSION**

Accordingly, the Court respectfully recommends **granting** Defendant's Motion [filed January 26, 2022; ECF 11]. The Court recommends dismissal of Plaintiffs claims without prejudice with leave to file an Amended Complaint.[5]

Respectfully submitted this 6th day of April, 2022, at Denver, Colorado.

BY THE COURT:

*Michael E. Hegarty*

Michael E. Hegarty
United States Magistrate Judge

---

[5] Be advised that all parties shall have fourteen (14) days after service hereof to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned. Fed. R. Civ. P. 72. The party filing objections must specifically identify those findings or recommendations to which the objections are being made. The District Court need not consider frivolous, conclusive or general objections. A party's failure to file such written objections to proposed findings and recommendations contained in this report may bar the party from a *de novo* determination by the District Judge of the proposed findings and recommendations. *United States v. Raddatz*, 447 U.S. 667, 676-83 (1980); 28 U.S.C. § 636(b)(1). Additionally, the failure to file written objections to the proposed findings and recommendations within fourteen (14) days after being served with a copy may bar the aggrieved party from appealing the factual findings and legal conclusions of the Magistrate Judge that are accepted or adopted by the District Court. *Duffield v. Jackson*, 545 F.3d 1234, 1237 (10th Cir. 2008) (quoting *Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991)).