IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 22-cv-00141-RMR-MEH

CLVM LLC d/b/a Valimenta Labs, and
EMEK BLAIR,

      Plaintiffs,

v.

ERIC VAN HANDEL, and
CHARLES BARKER,

      Defendants.

---

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

---

**Michael E. Hegarty, United States Magistrate Judge**.

Before the Court are three pending motions: (1) Defendant Eric Van Handel's Motion to Dismiss First Amended Complaint (ECF 37); (2) Defendant Charles Barker's Motion to Dismiss for Failure to Serve Process (ECF 43); and (3) Plaintiffs' Motion to Voluntarily Dismiss Declaratory Judgment Claim (ECF 48). These motions follow the filing of Plaintiffs' First Amended Complaint ("FAC"), a consequence of this Court's prior recommendation on Mr. Van Handel's previous motion to dismiss. ECF 27 (recommendation); ECF 31 (order adopting recommendation). Plaintiffs CLVM LLC d/b/a Valimenta Labs ("CLVM") and Emek Blair reassert their claims for breach of contract, fraudulent misrepresentation, and declaratory judgment and add two new claims for fraudulent inducement and conspiracy to commit fraud. ECF 35. They also added Mr. Barker as a Defendant. Mr. Van Handel's motion argues for dismissal of all claims. ECF 37. Mr. Barker's motion contends he was not properly served with the FAC. ECF 43. Most

recently, Plaintiffs' motion attempts to voluntarily dismiss their declaratory judgment claim. ECF 48. The time for briefing has expired on all pending motions. Because the FAC does not correct the previous pleading defects, this Court respectfully recommends granting Mr. Van Handel's motion, denying Plaintiffs' motion, and denying as moot Mr. Barker's motion.

## **FACTUAL BACKGROUND**

To begin, the Court notes that the allegations made in the FAC do not materially differ from the allegations in the original Complaint. As such, much of the Court's recitation of facts below mirrors the factual background in its previous recommendation. With that understanding, the following are factual allegations (as opposed to legal conclusions, bare assertions, or conclusory allegations) made by Plaintiffs in their FAC, which are taken as true for analysis under Fed. R. Civ. P. 12(b)(6) pursuant to *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

CLVM is a Colorado limited liability company that is owned by Emek Blair. ECF 35 at 1, ¶¶ 1–2.  On or about December 22, 2015, CLVM entered into a Promissory Note and Equity Option Agreement ("Note") by and between Mr. Van Handel and Mr. Barker. *Id.* at 2, ¶ 7. Mr. Barker and Mr. Van Handel, referred to as "Lenders" under the Note, agreed to provide three hundred thirty-five thousand dollars ($335,000.00) in exchange for five percent interest per annum or, in the alternative, an option ("Option") to purchase a combined sixteen percent equity interest in CLVM, with each holding eight percent of the total shares. *Id.* at ¶ 9. Mr. Van Handel tendered the entire amount on behalf of both Lenders ("Loan"). *Id.* at ¶ 10. The Note specifically provided that if the "Lenders fail to exercise the Option . . . . CLVM promises to pay ERIC VAN HANDEL the principal sum of [$335,000.00], with interest on the principal balance from December 1, 2015, until paid at the rate of five percent (5%) per annum." *Id.* at ¶ 11. Mr. Barker provided no consideration for the Note. *Id.* at ¶ 13.

Rather, Mr. Van Handel and Mr. Barker entered into a Collateralized Promissory Note, dated December 1, 2015, in which Mr. Barker agreed to pay Mr. Van Handel one hundred sixty-seven thousand five hundred dollars ($167,500.00) with interest at a rate of five percent per annum until the Loan was repaid ("Barker Note"). *Id.* at 2–3, ¶ 14. Mr. Van Handel acknowledged that he was the sole lender entitled to payment of the Loan. *Id.* at 3, ¶ 17.

CLVM began repaying the Loan in December 2016. *Id.* at ¶ 20. Although CLVM made the payments to both Mr. Van Handel and Mr. Barker, Mr. Van Handel requested that most of the payments be made to Mr. Barker. *Id.* CLVM agreed to this because the Barker Note provided that "any money received [by Mr. Barker] by CLVM LLC shall be distributed directly to Eric Van Handel until such time [as] Eric Van Handel has been paid in full including interest." *Id.* Despite making the payments, CLVM learned that Mr. Barker never paid any money he received from CLVM to Mr. Van Handel, nor has he paid any money to Mr. Van Handel pursuant to the Barker Note. *Id.* at 4, ¶ 21.

On June 18, 2019, CLVM paid the remaining principal on the Loan plus five percent interest to Mr. Van Handel. *Id.* at ¶ 22. However, he refused to cash the check. *Id.* Instead, on July 17, 2019, Mr. Barker attempted to exercise the Option and indicated that Mr. Van Handel also wished to exercise the Option. *Id.* at ¶ 23. CLVM rejected this request because the Lenders had already chosen the repayment of the Loan. *Id.* at ¶ 24. By March 2020, both Mr. Van Handel and Mr. Barker were represented by counsel, and Mr. Van Handel knew that Mr. Barker was contemplating a lawsuit against Plaintiffs regarding obligations under the Note ("Barker Litigation"). *Id.* at ¶ 25. In March 2020, Plaintiffs and Mr. Van Handel engaged in a mediation regarding his claim for an eight percent interest in CLVM. *Id.* at ¶ 26. Despite communicating with Mr. Barker, Mr. Van Handel did not invite him to participate in the mediation. *Id.* at ¶ 27. Mr. Van

Handel never disclosed during the mediation that Mr. Barker planned on initiating litigation. *Id.* at 5, ¶ 28. Plaintiffs did not realize that Mr. Barker intended to initiate the Barker Litigation, or they would not have mediated without his involvement. *Id.* at 4, ¶ 27.

Despite believing that Mr. Van Handel was the only Lender entitled to repayment under the Note, Plaintiffs "wanted to ensure that any potential settlement would extinguish the Promissory Note in its entirety." *Id.* at 5, ¶ 29.[1] Accordingly, Plaintiffs requested, and Mr. Van Handel agreed, that Mr. Van Handel would execute an affidavit stating that all obligations to him under the Note would be satisfied upon payment under a settlement agreement. *Id.* at ¶ 30. On March 19, 2020, the parties entered into a Mutual Release and Settlement Agreement ("Settlement Agreement"). *Id.* at ¶ 32. It provided that Plaintiffs would pay Mr. Van Handel five hundred forty thousand dollars ($540,000.00) in exchange for the execution of a broad, general release. *Id.* at 6, ¶ 36. The release included all claims related to the Note. *Id.* This included a warranty that Mr. Van Handel had "the sole and exclusive right to receive the Settlement Sum," and that "no other person or entity has, or has had, any interest in the claims, demand, or obligations or causes of action referred to in this [Settlement] Agreement . . . ." *Id.* at 5–6, ¶¶ 33–34. Mr. Van Handel also signed an affidavit ("Affidavit"), which provided:

1.  In or around December 2015, I provided $335,000 to CLVM LLC pursuant to [the Note].

2.  The Note was executed by myself and Charles Barker ("Barker"), as "Lender," and Emek Blair on behalf of CLVM LLC, as "Borrower."

\*\*\*

4.  On March 6, 2020, Emek Blair and I participated in a mediation concerning the rights and obligations of myself as a Lender and CLVM as Borrower

---

[1] The original Complaint alleged that Plaintiffs were concerned that Mr. Barker would attempt to exercise the Option even if they settled with Mr. Van Handel. ECF 4 at ¶ 23.

           under the Note and as a result a settlement was reached under which I agreed to satisfaction of all amounts due to me, Eric Van Handel, under the Note.

5.      Upon payment by Blair of all sums described in that certain Mutual Release and Settlement Agreement dated effective March 19, 2020, all of CLVM LLC's obligations to Eric Van Handel under the Note have been fully satisfied and resolved.

*Id.* at 7, ¶ 41.

Based on Mr. Van Handel's representations in the Settlement Agreement and the Affidavit, Plaintiffs "believed that the Loan was fully repaid since [Mr.] Van Handel was the only Lender entitled to repayment under the Note." *Id.* at ¶ 44. However, when Mr. Van Handel signed the Settlement Agreement and the Affidavit, he knew that Mr. Barker was preparing to take a contrary position in the Barker Litigation and concealed that information from Plaintiffs. *Id*. at 8, ¶ 48. On April 7, 2020, Mr. Barker initiated the Barker Litigation against Plaintiffs, alleging that the Note was not extinguished by the Settlement Agreement. *Id.* at ¶ 49. During his deposition in the Barker Litigation, Mr. Van Handel testified that (1) Mr. Barker, not Mr. Van Handel, loaned CLVM the $167,500; (2) Mr. Barker is entitled to repayment under the Note; and (3) the Note was not repaid under the Settlement Agreement. *Id.* at 9, ¶ 51. These statements and others, *id.* at ¶¶ 52–53, allegedly contradict Mr. Van Handel's sworn Affidavit. *Id.* at ¶ 54.

Plaintiffs allege that Mr. Van Handel "has not extinguished the Barker Note—despite being fully repaid under the Note and not being owed anything by [Mr.] Barker—so that [Mr.] Barker can maintain his contention that the Option remains open and that CLVM is indebted to him." *Id.* at ¶ 56. They contend that Mr. Van Handel signed the Settlement Agreement knowing he would take a contrary position later, and that he and Mr. Barker conspired to time the filing of the Barker Litigation to after the execution of the Settlement Agreement. *Id*. at 10, ¶¶ 58–59. Mr. Van Handel intended for Plaintiffs to rely on his representations, and they did so. *Id.* at ¶¶ 60–61.

Due to Mr. Van Handel's actions, Plaintiffs assert five claims in this case, three of which are repeats from their original Complaint. With the first claim, Plaintiffs claim Mr. Van Handel breached the Settlement Agreement and the implied duty of good faith and fair dealing. *Id.* at 11–12, ¶¶ 66–74. With their second and third claims, Plaintiffs assert that Mr. Van Handel made false misrepresentations or concealed information to induce Plaintiffs to enter into the Settlement Agreement. *Id.* at 12–15, ¶¶ 75–89. On the fourth claim, Plaintiffs seek a declaration that Mr. Barker no longer owes any money pursuant to the Barker Note, and CLVM thus owes no obligation to Mr. Barker under the Note. *Id.* at 15, ¶¶ 90–93. Finally, Plaintiffs' fifth claim is against both Defendants for conspiracy to commit fraud. *Id.* at 15–16, ¶¶ 94–96.

## LEGAL STANDARDS

The purpose of a motion to dismiss under Fed. R. Civ. P. 12(b)(6) is to test the sufficiency of the plaintiff's complaint. *Sutton v. Utah State Sch. For the Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 2008). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility, in the context of a motion to dismiss, means that the plaintiff pled facts which allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id. Twombly* requires a two-prong analysis. First, a court must identify "the allegations in the complaint that are not entitled to the assumption of truth," that is, those allegations which are legal conclusions, bare assertions, or merely conclusory. *Id.* at 680. Second, the Court must consider the factual allegations "to determine if they plausibly suggest an entitlement to relief." *Id.* at 681. If the allegations state a plausible claim for relief, such claim survives the motion to dismiss. *Id.* at 679.

Plausibility refers "'to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.'" *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012) (quoting *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008)). "The nature and specificity of the allegations required to state a plausible claim will vary based on context." *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1215 (10th Cir. 2011). Thus, while the Rule 12(b)(6) standard does not require that a plaintiff establish a prima facie case in a complaint, the elements of each alleged cause of action may help to determine whether the plaintiff has set forth a plausible claim. *Khalik*, 671 F.3d at 1192. However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. The complaint must provide "more than labels and conclusions" or merely "a formulaic recitation of the elements of a cause of action," so that "courts 'are not bound to accept as true a legal conclusion couched as a factual allegation.'" *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint has made an allegation, "but it has not shown that the pleader is entitled to relief." *Id.* (quotation marks and citation omitted).

## ANALYSIS

The changes in the FAC did not materially alter the allegations of the claims at issue. For that reason, the Court repeats much of its prior analysis from the prior recommendation.

## I. Breach of Contract Claim

For a party to assert a breach of contract claim under Colorado law, it must show: (1) the existence of a contract, (2) performance by the plaintiff or some justification for nonperformance, (3) failure to perform the contract by the defendant, and (4) resulting damages. *W. Distrib. Co. v. Diodosio*, 841 P.2d 1053, 1058 (Colo. 1992). Additionally, "the terms of a contract must be expressed with a reasonable certainty." *Am. Min. Co. v. Himrod-Kimball Mines Co.*, 235 P.2d 804, 807 (Colo. 1951). Based on the FAC, Plaintiffs' breach of contract claim is centered around Mr. Van Handel's alleged lies in the Settlement Agreement and Affidavit. Resp. at 7. Specifically, Plaintiffs argue that Mr. Van Handel breached by lying when he warrantied that he had the sole and exclusive right to receive the Settlement Sum and that all obligations of CLVM to Mr. Van Handel were satisfied. *Id.* Although Plaintiffs attempted to reformulate this claim, the Court finds no basis to depart from its prior recommendation to dismiss this claim because of of the lack of plausible allegations showing a breach of the Settlement Agreement.

### A.      Settlement Agreement

Plaintiffs allege in their FAC that "[a]n essential provision of the Settlement Agreement was the incorporated Affidavit." ECF 35 at 11, ¶ 68. Mr. Van Handel signed the Affidavit. *Id.* at 7, ¶ 41. Plaintiffs' ultimate problem is that Mr. Van Handel "testif[ied] in a manner that directly contradict[ed] the Settlement Agreement and Affidavit during a deposition in the Barker Litigation." *Id.* at 7, ¶ 48. But the Settlement Agreement is silent as to Mr. Van Handel's testifying obligations. ECF 35-3 at 2.[2] Indeed, the Settlement Agreement *only* requires that Mr. Van Handel execute the Affidavit. *Id.* By the plain terms of the Settlement Agreement, Plaintiffs received the

---

[2] The Court can consider the Settlement Agreement because it is cited in the FAC, attached to the FAC, and central to Plaintiffs' claims. *Masterpiece Cakeshop Inc. v. Elenis*, 445 F. Supp. 3d 1226, 1239 (D. Colo. Jan. 4, 2019) ("A court may also consider documents that are incorporated in the complaint by reference or that are referred to in the complaint, if the documents are central to the complaint and the parties do not dispute their authenticity.").

consideration they bargained for. Because Plaintiffs have not identified any other provision of the Settlement Agreement in which Mr. Van Handel is alleged to have breached through his allegedly contradicting testimony, Plaintiffs' breach of contract claim necessarily fails. *See Valentine v. PNC Fin. Servs. Grp., Inc.*, No. 18-cv-01934-CMA-SKC, 2019 WL 5790696, at *6 (D. Colo. Aug. 1, 2019), *recommendation adopted*, 2019 WL 4126596 (D. Colo. Aug. 30, 2019); *see also Stender v. Gerardi*, No. 07-cv-02503-EWN-MJW, 2008 WL 4452117 (D. Colo. Sep. 30, 2008) (finding no breach of contract "because [plaintiffs] have not adequately indicated which provisions of which contracts allegedly contain such rights").

### B.      Implied Duty of Good Faith and Fair Dealing

Like with the original Complaint, in addition to an express breach of contract, Plaintiffs assert in the FAC that Mr. Van Handel breached the implied duty of good faith and fair dealing. "Under Colorado law, every contract contains an implied duty of good faith and fair dealing." *City of Golden v. Parker*, 138 P.3d 285, 292 (Colo. 2006). "The duty of good faith and fair dealing may be relied upon 'when the manner of performance under a specific contract term allows for discretion on the part of either party.'" *Id.* (quoting *Amoco Oil Co. v. Ervin*, 908 P.2d 493, 498 (Colo. 1995)). However, this duty of good faith "cannot be used to 'contradict terms or conditions for which a party has bargained'; 'obligate a party to accept a material change in the terms of the contract'; 'assume obligations that vary or contradict the contract's express provisions'; or 'permit a party to inject substantive terms into the contract.'" *Goodrich v. Alterra Mountain Co.*, No. 20-cv-01057-RM-SKC, 2021 WL 2633326, at *7 (D. Colo. June 25, 2021) (quoting *Stokes v. DISH Network, L.L.C.*, 838 F.3d 948, 953 (8th Cir. 2016)).

For the reasons explained here and in the prior recommendation, the Settlement Agreement does not contain a provision mandating Mr. Van Handel testify in a certain way. The Settlement

Agreement obligated Mr. Van Handel to execute an Affidavit and thus swear under oath to the information in the Affidavit. He did so. There was no discretion with the execution of the Affidavit since the Settlement Agreement indicated that Mr. Van Handel would sign the document (the Affidavit) attached as Exhibit A. ECF 35-3 at 2. In other words, Mr. Van Handel did not have discretion to add or subtract information from the Affidavit. *See City of Golden v. Parker*, 138 P.3d 285, 292 (Colo. 2006) ("Discretion in performance occurs 'when the parties, at formation, defer a decision regarding performance terms of the contract' leaving one party with the power to set or control the terms of performance after formation.") (quoting *Amoco Oil Co.*, 908 P.2d at 498). Even Plaintiffs' citations indicate that the implied duty of good faith and fair dealing apply only when there are discretionary terms. *ADT Sec. Servs., Inc. v. Premier Home Prot., Inc.*, 181 P.3d 288, 293 (Colo. App. 2007) ("A party's justified expectations are violated if evidence indicates it would not have signed the contract had it known of the manner in which the party given discretion would *exercise its discretion to determine open terms* under a contract.") (emphasis added).

To the extent the Settlement Agreement conferred any discretion—a dubious proposition—Mr. Van Handel exercised that discretion by swearing under oath to the statements in the Affidavit as agreed to by the parties. As to obligations beyond the Affidavit, for which the Settlement Agreement is silent, Plaintiffs cannot "'hijack' the implied covenant to provide [an obligation] where none exists." *Goodrich*, 2021 WL 2633326, at *7. Because the implied covenant applies "only when the manner of performance under a *specific contract term* allows for discretion on the part of either party," *Amoco Oil Co.*, 908 P.2d at 498 (emphasis added), and Plaintiffs have pointed to no such term in the Settlement Agreement, the Court respectfully recommends dismissing Plaintiffs' claim for the breach of the implied duty of good faith and fair dealing.

## II.   <u>Fraudulent Misrepresentation/Concealment and Fraudulent Inducement Claims</u>

Under Colorado law, a claim for fraudulent misrepresentation has five elements: (1) the defendant made a false representation of a material fact, (2) the one making the representation knew it was false, (3) the person to whom the representation was made was ignorant of the falsity, (4) the representation was made with the intention that it be acted upon, and (5) the reliance resulted in damage to the plaintiff. *Bristol Bay Prods., LLC v. Lampack*, 312 P.3d 1155, 1160 (Colo. 2013). The elements of a fraudulent concealment claim are nearly identical: (1) the concealment of a material existing fact that in equity and good conscience should be disclosed; (2) knowledge on the part of the party against whom the claim is asserted that such a fact is being concealed; (3) ignorance of that fact on the part of the one from whom the fact is concealed; (4) the intention that the concealment be acted upon; and (5) action on the concealment resulting in damages. *Ballow v. PHICO Ins. Co.*, 875 P.2d 1354, 1361 (Colo. 1993) (citation omitted). Similarly, a plaintiff must plead four elements for a claim for fraudulent inducement: (1) the defendant made a knowing misrepresentation of a material fact; (2) the plaintiff relied on the material misrepresentation; (3) the plaintiff was justified in relying on the misrepresentations; and (4) the plaintiff suffered damages as a result of that reliance. *Clancy Sys. Int'l, Inc. v. Image Sensing Sys., Inc.*, No. 16-cv-01848-CMA-KMT, 2017 WL 3086624, at *4 (D. Colo. Jan. 30, 2017).

Plaintiffs allege three, primary false representations and/or concealed facts in their FAC to support their claims:

1.   Mr. Van Handel requested that CLVM repay the Loan to Mr. Barker but did not require Mr. Barker to repay the loan underlying the Barker Note to Mr. Van Handel;

2.   Mr. Van Handel's agreement to execute the Affidavit, which included the statement, "Upon payment by Blair of all sums described in that certain [Settlement Agreement] dated effective March 19, 2020, all of CLVM

> LLC's obligations to Eric Van Handel under the Note have been fully satisfied and resolved"; and
>
> 3.   Mr. Van Handel knew that Mr. Barker was going to file the Barker Litigation.

ECF 35 at 13–14, ¶¶ 76, 84.[3] These are the same material representations as in the original Complaint. Plaintiffs argue that these facts "were material to the Settlement Agreement and CLVM and Plaintiffs' resulting agreement to pay [Mr.] Van Handel $540,000." *Id.* at 13, ¶ 77. In other words, Mr. Van Handel induced "Plaintiffs to take a course of action that they would not have taken had they known the actual facts." *Id.* at ¶ 79.

In their FAC and response brief (as they did in the original Complaint), Plaintiffs consistently take the position that the purpose of the Settlement Agreement was to resolve all claims concerning the Note. *E.g.*, *id.* at 6, ¶ 36. Yet, this proposition is belied by the terms of the Settlement Agreement itself.[4] *Tilley v. Maier*, 495 F. App'x 925, 927 (10th Cir. 2012) ("[F]actual allegations that contradict . . . a properly considered document are not well-pleaded facts that the court must accept as true."). Under the mutual release, the parties "acknowledge[d] and agree[d] that [Mr.] Van Handel has no authority nor purports to have any authority to bind [Mr.] Barker to any release, waiver, or settlement of asserted or unasserted claims of [Mr.] Barker." ECF 35-3 at 2. After all, Plaintiffs acknowledge that the Settlement Agreement and Affidavit only pertained to "all obligations to [Mr. Van Handel] under the Note." ECF 35 at 5, ¶ 30. It is a contradiction to

---

[3] Plaintiffs make a vague allegation as to allegedly false "representations during the Mediation" made by Mr. Van Handel. ECF 35 at 8, ¶ 46. The Court construes that allegation to simply reiterate the three false representations and/or concealments made above. To the extent that Plaintiffs intended to state additional materially false representations or concealments, they have not done so with particularity as required by Fed. R. Civ. P. 9(b).

[4] Plaintiffs argue that this analysis "incorrectly attempted to adjudicate the merits of Plaintiffs' claims when ruling on a Motion to Dismiss." ECF 45 at 9. However, Plaintiffs did not object to this analysis in the Court's prior recommendation; in fact, Plaintiffs did not file any objection. As a result, District Judge Rodriguez accepted the Court's analysis and recommendation. ECF 31.

say that the Settlement Agreement released *all* possible claims under the Note when it was limited by its terms to Mr. Van Handel's claims and expressly precluded waiver of any of Mr. Barker's claims.

"It is long-settled law that if a party claiming fraud has access to information that was equally available to both parties and would have led to the true facts, that party has no right to rely on a false representation." *Vinton v. Virzi*, 269 P.3d 1242, 1247 (Colo. 2012). All the material facts Plaintiffs alleged Mr. Van Handel misrepresented or concealed, Plaintiff either knew or had access to the information to know. They knew Mr. Barker was represented by counsel. ECF 26 at 7, ¶ 10 (listing as an undisputed fact in the Scheduling Order that "CLVM and Barker engaged in settlement discussions, including discussions through counsel to schedule a mediation"). They knew Mr. Barker made a demand for his eight percent equity interest. ECF 35 at 4, ¶ 23.[5] They knew that Mr. Barker's demand preceded the mediation with Mr. Van Handel. ECF 26 at 7, ¶ 9. Moreover, the Settlement Agreement and Affidavit were limited to the obligations owed to Mr. Van Handel, not Mr. Barker. The express terms of the Settlement Agreement excluded from the release any claim by Mr. Barker. ECF 1-4 at 2. From the totality of these circumstances, Plaintiffs had reasonable informational access to the fact that Mr. Barker might have taken a contrary position to the Settlement Agreement (to which he was not a party) by continuing to claim he could exercise the Option. *Pernick v. Computershare Trust Co., Inc.*, 136 F. Supp. 3d 1247, 1269–70 (D. Colo. 2015) (finding no fraud in which party "had access to the very information that would have led to the conclusion" that the other party had made a false representation).

---

[5] Plaintiffs omitted from the FAC the allegation that they knew that "even if they settled with [Mr.] Van Handel, that [Mr.] Barker may still try to exercise the Option." ECF 4 at 3, ¶ 23. While the Court does not consider this allegation when evaluating the FAC, its omission is largely irrelevant, since the allegations that do appear in the FAC demonstrate that Plaintiffs cannot establish the requisite reliance necessary for their fraud claims.

The Court has taken Plaintiffs' well-pleaded allegations as true and viewed them in the light most favorable to Plaintiffs. But when Plaintiffs' allegations are contradicted by the terms of the Settlement Agreement, the Court does not take the allegations as true. When only the well-pleaded allegations are considered, the Court finds no plausibly pleaded fraudulent misrepresentation or concealment claim or fraudulent inducement claim. Thus, as it did with the original Complaint, the Court respectfully recommends the dismissal of these claims.

## III.   <u>Declaratory Judgment</u>

Plaintiffs reasserted their declaratory judgment claim in the FAC, but they have subsequently moved under Fed. R. Civ. P. 41(a)(2) to voluntarily dismiss the claim. ECF 48. Mr. Van Handel opposes this, arguing that Rule 41(a)(2) does not apply. The Court agrees with Mr. Van Handel. Rule 41(a)(1) provides that a "plaintiff may dismiss an action without a court order by filing . . . a notice of dismissal before the opposing party serves either an answer or a motion for summary judgment. . . . ." Fed. R. Civ. P. 41(a)(1)(A)(i). Rule 41(a)(2) states that "[e]xcept as provided in Rule 41(a)(1), an action may be dismissed at the plaintiff's request only by court order, on terms that the court considers proper." Fed. R. Civ. P. 41(a)(2). Although Rule 41 references dismissal of an "action," the rule permits "dismissal of all claims against a single defendant . . . ." *Paulson v. Two Rivers Water and Farming Co.*, No. 19-cv-02639-PAB-NYW, 2021 WL 2660789, at *3 (D. Colo. June 29, 2021). But the rule "is not an appropriate mechanism for dismissing less than all claims against a particular defendant in an action." *Bustos v. Tower Ins. Co. of N.Y.*, No. 17-cv-01762-PAB-NYW, 2018 WL 2008840, at *1 (D. Colo. Apr. 30, 2018) (citing *Gobbo Farms & Orchards v. Poole Chemical Co., Inc.*, 81 F.3d 122, 123 (10th Cir. 1996)). Because Plaintiffs

only seek dismissal of a claim and not an action, their motion to voluntarily dismiss the declaratory judgment claim should be denied.[6]

 As to the motion to dismiss the declaratory judgment claim, the Court's analysis from its prior recommendation remains unchanged since Plaintiffs did not make any changes for this claim. In fact, they do not even address the claim in their response to the motion to dismiss. The Tenth Circuit in *State Farm Fire & Cas. Co. v. Mhoon* described a two-part test that trial courts must consider when deciding whether to hear a declaratory judgment claim. First, "[w]ill a declaration of rights, under the circumstances, serve to clarify or settle legal relations in issue?" 31 F.3d 979, 983 (10th Cir. 1994). Second, "[w]ill it terminate or afford relief from the uncertainty giving rise to the proceeding?" *Id.* "If an affirmative answer can be had to both questions, the trial court should hear the case; if not, it should decline to do so." *Id.* However, in addition to these two questions, the Tenth Circuit also identified five factors that courts must consider:

> [1] whether a declaratory action would settle the controversy; [2] whether it would serve a useful purpose in clarifying the legal relations at issue; [3] whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for a race to *res judicata* "; [4] whether use of a declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction; and [5] whether there is an alternative remedy which is better or more effective.

*Id.* (citing *Allstate Ins. Co. v. Green*, 825 F.2d 1061, 1063 (6th Cir. 1987)).

 Here, a consideration of the above factors cautions against the exercise of jurisdiction over Plaintiffs' declaratory judgment claim. As currently framed, the declaratory judgment would not resolve this case since it only seeks a declaration that Mr. "Barker no longer owes any money pursuant to the Barker Note, and CLVM thus owes no obligation to Barker under the Note." ECF

---

[6] In any event, the Court's analysis on declining to exercise jurisdiction over the declaratory judgment claim would moot Plaintiffs' motion.

4 at 8, ¶ 61. The claims for breach of contract and fraudulent misrepresentation are independent of

CLVM's obligations to Mr. Barker. More importantly, a declaration in this case would not resolve

the ongoing Barker Litigation in state court. While Mr. Barker made a declaratory judgment claim

in that action, he also asserted other claims, and Plaintiffs brought a defamation counterclaim. ECF

11-2; ECF 11-3. For these reasons, the first two *Mhoon* factors weigh against exercising

jurisdiction. *See Quest Commc'ns Int'l, Inc. v. Thomas*, 52 F. Supp. 2d 1200, 1207 (D. Colo. 1999)

(resolving the first two factors against exercising jurisdiction because the declaratory judgment

action would leave unresolved other issues in parallel state court proceedings); *see also Mid-*

*Continent Cas. Co. v. Village at Deer Creek Homeowners Ass'n, Inc.*, 685 F.3d 977, 982 n.3 (10th

Cir. 2012).

Additionally, the existence of the Barker Litigation causes the Court to weigh the third,

fourth, and fifth factors against exercising jurisdiction. Mr. Barker seeks a declaration of his rights

under the Note in the Barker Litigation. ECF 11-2. Although it may not have been their intent, by

seeking a similar declaration in federal court, Plaintiffs have initiated a race to *res judicata* that

threatens to create friction between the federal and state courts. *See Bd. of Cty. Commr's of Cty. of*

*Boulder v. Rocky Mountain Christian Church*, 481 F. Supp.2d 1181, 1188 (D. Colo. 2007) (finding

the declaratory judgment claim to be "nothing more than a procedural maneuver . . . to seize a

strategic advantage"). Finally, Plaintiffs have a more effective remedy in the concurrent, Barker

Litigation since that case "aggregates all of the various [claims between Plaintiffs and Mr. Barker],

and thus, will offer a conclusive adjudication of the parties' dispute, whereas this case isolates just

one of those issues." *Id.* at 1188–89; *see also Federal Ins. Co. v. Sprint Corp.*, 293 F. Supp. 2d

1245, 1248 (D. Kan. 2003) (declining exercise of jurisdiction, in part, because "[a]ll necessary

parties are or can be joined . . . and all claims can be adjudicated" in concurrent state court proceeding).

Accordingly, the Court finds that the balance of the *Mhoon* factors counsels against exercising jurisdiction under the Declaratory Judgment Act, 28 U.S.C. § 2201. The Court respectfully recommends dismissing Plaintiffs' declaratory judgment claim without prejudice. *See Bristol W. Ins. Co. v. Salas*, 469 F. Supp. 3d 1175, 1180 (D.N.M. June 25, 2020) (dismissing claim without prejudice when *Mhoon* factors counseled against exercising jurisdiction).

## IV.   **Conspiracy to Commit Fraud**

Plaintiffs added a conspiracy to commit fraud claim to their FAC. "[T]he essence of a civil conspiracy claim is not the conspiracy itself, but the actual damages resulting from the acts done in furtherance of the conspiracy." *Goff v. United Airlines*, No. 16-cv-01853-KMT, 2017 WL 11502322, at *4 (D. Colo. Mar. 10, 2017) (quoting *Double Oak Constr., L.L.C. v. Cornerstone Development Int'l, L.L.C.*, 97 P.3d 140, 146 (Colo. App. 2003)). Therefore, a "civil conspiracy claim is a derivative cause of action that is not independently actionable." *Id.* In other words, "if the acts alleged to constitute the underlying wrong provide no cause of action, then no cause of action arises for the conspiracy alone." *Id.* Because the Court recommends dismissal of the underlying fraud claims, the Court also recommends dismissal of Plaintiffs' conspiracy claim.

## V.   **Leave to Amend**

"In dismissing a complaint for failure to state a claim, the court should grant leave to amend freely 'if it appears at all possible that the plaintiff can correct the defect.'" *Triplett v. LeFlore Cty., Oklahoma*, 712 F.2d 444, 446 (10th Cir. 1983) (quoting 3 Moore's Federal Practice, ⁋ 15.10 & n. 2 (1983)). However, "[a]t least outside of the pro se context, when a litigant fails to put the district court on adequate notice—in a legally cognizable manner—of his request for leave to amend, then

the district court will not be faulted for failing to grant leave to amend." *Doe v. Heil*, 533 F. App'x 831, 847 (10th Cir. 2013).

Here, the Court is recommending dismissal of all claims. Plaintiffs are represented by counsel, but Plaintiffs have not requested, through motion or otherwise, leave to amend. Moreover, Plaintiffs have already amended their pleading once. It would be within this Court's discretion to refuse to grant leave to amend sua sponte. *Id.* ("[W]e will not upset the district court's dismissal with prejudice on the grounds that it failed sua sponte to give a [plaintiff] —who was represented by counsel—an opportunity to file an amended complaint."); *see Burger King Corp. v. Weaver*, 169 F.3d 1310, 1318 (11th Cir. 1999) ("Although leave to amend should be liberally granted, a trial court is not required to sua sponte grant leave to amend prior to making its decision [to dismiss]."). Because Plaintiffs had the opportunity to amend their Complaint as to the claims against Mr. Van Handel, the Court does not recommend giving Plaintiffs another opportunity to amend, because permitting amendment would likely prove futile. Accordingly, the Court recommends dismissal of Plaintiffs' claims against Mr. Van Handel with prejudice (except the declaratory judgment claim). However, as to the claims against Mr. Barker, because of the ongoing Barker Litigation, the Court hesitates to recommend dismissal of any claim with prejudice lest it interfere in that litigation in some manner. Therefore, the Court recommends dismissal of Plaintiffs' claims against Mr. Barker without prejudice (but without sua sponte leave to amend).

## **CONCLUSION**

For the reasons stated in this Recommendation, the Court respectfully recommends **granting** Mr. Van Handel's motion to dismiss [filed May 10, 2022; ECF 37], **denying** Plaintiffs' motion to dismiss [filed July 1, 2022; ECF 48], and **denying as moot** Mr. Barker's motion to

dismiss [filed June 7, 2022; ECF 43].[7] The Court recommends dismissal without prejudice of all claims against Mr. Barker and the declaratory judgment claim against Mr. Van Handel and dismissal with prejudice of Plaintiffs' other claims against Mr. Van Handel. Because this would dismiss all claims in this action, the Court also recommends closing the case.[8]

Respectfully submitted this 5th day of August, 2022, at Denver, Colorado.

BY THE COURT:

Michael E. Hegarty
United States Magistrate Judge

---

[7] Although Mr. Barker's motion to dismiss for lack of service is moot in light of the recommendation to dismiss all claims, the briefing on Mr. Barker's motions raises troubling concerns about Mr. Barker's alleged efforts to avoid service. ECF 46. Without commenting on the veracity of such assertions, Plaintiffs and Mr. Barker are currently engaged in litigation in state court with an upcoming trial date. ECF 54. Because both sides are represented by competent counsel, service issues should not exist. The Court expects far better than the type of conduct alleged in the briefing on the motion to dismiss.

[8] Be advised that all parties shall have fourteen (14) days after service hereof to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned. Fed. R. Civ. P. 72. The party filing objections must specifically identify those findings or recommendations to which the objections are being made. The District Court need not consider frivolous, conclusive or general objections. A party's failure to file such written objections to proposed findings and recommendations contained in this report may bar the party from a *de novo* determination by the District Judge of the proposed findings and recommendations. *United States v. Raddatz*, 447 U.S. 667, 676-83 (1980); 28 U.S.C. § 636(b)(1). Additionally, the failure to file written objections to the proposed findings and recommendations within fourteen (14) days after being served with a copy may bar the aggrieved party from appealing the factual findings and legal conclusions of the Magistrate Judge that are accepted or adopted by the District Court. *Duffield v. Jackson*, 545 F.3d 1234, 1237 (10th Cir. 2008) (quoting *Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991)).